IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JODY L. W.,

                 Plaintiff,

      v.                                 Civil Action No.
                                      5:20-CV-1434 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR PLAINTIFF** | |
| LAW OFFICES OF<br>KENNETH HILLER, P.C.<br>6000 North Bailey Ave, Suite 1A<br>Amherst, NY 14226 | JUSTIN M. GOLDSTEIN, ESQ.<br>KENNETH R. HILLER, ESQ. |
| **FOR DEFENDANT** | |
| SOCIAL SECURITY ADMIN.<br>625 JFK Building<br>15 New Sudbury St<br>Boston, MA 02203 | CHRISTINE A. SAAD, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance ("DIB")

benefits for which she has applied.  For the reasons set forth below, I

conclude that the Commissioner's determination did not result from the

application of proper legal principles and is not supported by substantial

evidence.

I.     BACKGROUND

Plaintiff was born in April of 1967, and is currently fifty-five years of

age.  She was fifty-one years old on both her alleged onset date of October

10, 2018, and at the time of her application for benefits in January of 2019.

Plaintiff stands five feet and three inches in height, and weighed between

approximately one hundred and thirty and one hundred and forty-five

pounds during the relevant time period.  Plaintiff lives alone in a rented

house in Baldwinsville, New York.

In terms of education, plaintiff completed the eleventh grade,

---

[1]     This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

obtained a GED, and attended two years of college to obtain her

certification as a certified nursing assistant ("CNA").  She has worked in the

past as a traveling sales representative for companies that sold deli

products and rolls to grocery stores, as well as an office manager for a pool

supply store, a pharmacy technician, and a self-employed detailer of cars,

boats, and airplanes.

Physically, plaintiff alleges that she suffers from chronic pain in her

lumbar spine caused by an injury she sustained in a 2018 motor vehicle

accident.  She reports that she had to stop working as a result of that

accident.  She has received treatment for those impairments consisting of

pain medication, physical therapy, chiropractic care, acupuncture, epidural

steroid injections, and a laminectomy surgery on her lumbar spine, but

reports that she still experiences significant residual pain.  During the

relevant period, plaintiff treated for her spinal condition primarily with

Upstate Bone and Joint Center, Upstate Orthopedics, Atlas Chiropractic,

Regenerative Spine and Musculoskeletal Medicine, and Dr. Suzanne

Lamanna.  Plaintiff's physicians have discussed the possibility of a second

surgery.

Plaintiff testified at the hearing that she has difficulty standing for long

periods of time and bending, and that lifting even five or ten pounds hurts.

3

She now drives only short distances because of the pain, and reports that using stairs is also difficult.  Plaintiff notes that her daughter helps her clean her house, that other people have to walk her dog for her, and that she is no longer able to participate in water sports or boating because of her pain.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on January 30, 2019.  In support of her application, she alleged a disability onset date of October 10, 2018, and claimed to be disabled due to bulging discs in her lower back.

A hearing was conducted on February 21, 2020, by Administrative Law Judge ("ALJ") ALJ Robyn L. Hoffman to address plaintiff's application for benefits.  ALJ Hoffman issued an unfavorable decision on April 20, 2020.  That opinion became a final determination of the agency on November 17, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

### B.   The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.

4

Proceeding to step two, ALJ Hoffman found that plaintiff suffers from a severe impairment that imposes more than minimal limitations on her ability to perform basic work functions, namely degenerative disc disease of the lumbosacral spine with laminectomy.

At step three, ALJ Hoffman examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listing 1.04

ALJ Hoffman next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work "which involves the ability to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for six hours; and stand or walk for six hours in an eight-hour day with normal breaks."

ALJ Hoffman bypassed consideration of plaintiff's past work at step four due to insufficient vocational information, and proceeded to step five, where she concluded, based on application of the Medical-Vocational Guidelines ("Grids"), particularly Medical-Vocational Rules 202.13 and 202.14, that a finding of "not disabled" was directed.  Based upon these

findings, ALJ Hoffman concluded that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on November 20, 2020.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence due to her improper rejection of an extremely limiting opinion from treating physician Dr. Suzanne Lamanne, as well as her improper reliance on the opinions from the two nonexamining state agency medical consultants, one of whose opinions was rendered prior to plaintiff's laminectomy surgery, and the other of whose opinions was purely speculative and not consistent with the subsequent evidence that was developed in the record.

Oral argument was conducted in this matter, by telephone, on June 16, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

---

[2]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

7

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

> B.   Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work

> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

9

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence as a result of her improper consideration of the opinion evidence in this case.  More specifically, she argues that the ALJ erred (1) in finding the opinion from treating physician Dr. Lamanna to be unpersuasive because the ALJ relied only on selective evidence while ignoring other evidence, improperly interpreted medical imaging, and failed

to recontact Dr. Lamanna if she found the explanation provided for that
opinion was insufficient; and (2) in relying on the prior administrative
medical findings from the nonexamining state agency medical consultants
because (i) the initial opinion from Dr. A. Periakaruppan is stale in that it
was rendered prior to plaintiff surgery and thus does not provide an
accurate assessment of her functioning for the entire period at issue, and
(ii) the reconsideration opinion from Dr. S. Putcha, which assumes that
plaintiff will be able to perform light work within a year after her
laminectomy, is entirely speculative and not consistent with the treatment
notes that document that plaintiff in fact did not experience the post-
surgical improvement in her condition that Dr. Putcha expected.  Dkt. No.
15.  Plaintiff additionally argues that the ALJ's errors and the lack of any
reliable opinion evidence other than the opinion of Dr. Lamanna requires
remand solely for calculation of benefits.

Because plaintiff's application was filed after March 27, 2017, this
case is subject to the amended regulations regarding opinion evidence.
Under those regulations, the Commissioner "will not defer or give any
specific evidentiary weight, including controlling weight, to any medical
opinion(s), . . . including those from your medical sources," but rather will
consider whether those opinions are persuasive by primarily considering

whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 404.1520c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[3] and consistency[4] of those opinions.  20 C.F.R. § 404.1520c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the

---

[3]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[4]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

persuasiveness of that source's opinion.  20 C.F.R. § 404.1520c(c).

In a form entitled Medical Source Statement that is dated December 31, 2019, Dr. Suzanne Lamanna indicated that she had been treating plaintiff every one-to-four months since August 23, 2018, for plaintiff's diagnosis of radiculopathy from her lumbar region and lower back pain, for which her prognosis was noted as fair.  Administrative Transcript ("AT") at 420.[5]  Dr. Lamanna opined, in part, that plaintiff can sit for only fifteen minutes at one time and for two hours in an eight-hour workday, can stand for fifteen minutes at one time and stand or walk for two hours in an eight-hour workday, would require the ability to shift positions at will, would require unscheduled breaks three-to-four times per day for thirty minutes each, can occasionally lift less than ten pounds and rarely lift ten pounds, can rarely climb stairs and never twist, stoop, bend, crouch, squat, or climb ladders, can frequently use her hands and fingers, and can occasionally use her arms.  AT 420-22.  Dr. Lamanna further opined that plaintiff is incapable of even low stress work due to her limited mobility and pain, would likely be absent from work more than four days per month, and would constantly experience symptoms severe enough to interfere with her

---

[5]    The Administrative Transcript is found at Dkt. No. 11, and will be referred to throughout this decision as "AT __."

attention and concentration to perform even simple work.  AT 420, 422.

The ALJ found Dr. Lamanna's opinion to be unpersuasive, explaining that, in her view, the opinion is not consistent with the objective evidence including postoperative MRI findings and mostly normal examination observations, is not supported by her own treatment notes or any explanation or citation to clinical findings, and further that her conclusion that plaintiff would be absent from work more than four days per month is speculative and not based on objective evidence.  AT 14-16.

It is clear from the ALJ's decision that she applied the proper legal standard and specifically considered the factors of supportability and consistency, as required.  It is also true that the treatment records in this case generally document very little in the way of objective abnormalities related to plaintiff's range of motion, sensation, strength, and tenderness.  However, the ALJ's heavy reliance on that lack of objective findings appears to ignore the underlying evidence of fairly severe chronic pain, as documented in both the treatment notes from Dr. Lamanna and the rest of the medical evidence of record.  Because the ALJ's failure to look beyond the objective observations raises serious questions as to whether her findings are supported by substantial evidence, and because some of the reasons the ALJ provides related to the assessment of Dr. Lamanna's

opinion are contradicted or undermined by the record, I find that remand is warranted for further consideration of the evidence.

Apart from the broader reasons why the ALJ's finding does not appear to be supported by substantial evidence, I first note that the ALJ did not explain why she found the portion of Dr. Lamanna's opinion stating the need for a sit-stand option in particular to be unpersuasive.  Dr. Lamanna opined that plaintiff can sit or stand for only fifteen minutes at a time and would require the ability to shift positions at will.  AT 420-21.  Although there were certainly examinations where Dr. Lamanna did not note any issues with plaintiff's ability to sit during exams, there are also multiple other occasions when she did.  In October of 2018, approximately two months after plaintiff's injury, Dr. Lamanna observed that plaintiff appeared slightly uncomfortable sitting in the exam room chair.  AT 395.  A few weeks later, Dr. Lamanna noted that plaintiff was very agitated in the chair and needed to stand because her pain worsened with long periods of sitting or standing.  AT 388.  In January of 2019, Dr. Lamanna observed that plaintiff presented with mild discomfort and pain as indicated by her changing positions often.  AT 380.  In March of 2019, Dr. Lamanna again noted that plaintiff displayed pain indicated by needing to change positions often.  AT 361.  In April of 2019, approximately a month after plaintiff's

laminectomy surgery, Dr. Lamanna again noted that she was in pain as evidenced by needing to change positions often and facial grimacing.  AT 352.  In September of 2019, Dr. Lamanna observed that plaintiff was sitting leaning towards the left in the chair and was reporting a significant amount of pain.  AT 414.  Although these observations, which were made both before and after plaintiff's laminectomy, appear to support Dr. Lamanna's opinion that plaintiff would be unable to sit or stand for long periods of time and would require the ability to change positions during the workday, the ALJ does not discuss them or explain why she found that such a limitation was nonetheless not warranted.  In the absence of any vocational evidence, it is not clear how the adoption of such a limitation would have impacted the ALJ's finding at step five.  *See* SSR 83-12 ("In cases of unusual limitation of ability to sit or stand, a [vocational source] should be consulted to clarify the implications for the occupational base.").

Additionally, the ALJ's reasons for finding Dr. Lamanna's opinion to be unsupported, and that plaintiff could perform light work in general, beyond her citation to the objective observations on examinations, contain some problematic findings of fact that further undermine her assessment.

First, the ALJ cited MRI findings from after plaintiff's laminectomy and noted that "[t]here was no evidence of compression . . . , which undermines

the claimant's allegation of radiating pain to her lower extremity." AT 15. However, the ALJ does not cite to any physician's interpretation to suggest that a lack of spinal compression would mean that the plaintiff could not have radiating pain. Although plaintiff was not generally noted to have observable abnormal sensation in her leg on examinations, there is no evidence to suggest that her physicians disbelieved her reports that she experienced pain in her leg, and normal sensation or strength in no way logically precludes the existence of pain. Indeed, it was noted by one physician in April of 2019 that her postsurgical MRI continued to show narrowing and foraminal stenosis for which it was tentatively recommended that she eventually undergo an additional surgery. AT 317-19, 429. The ALJ's interpretation of a lack of compression on the MRI as meaning plaintiff did not have radiating pain in her leg is a clear example of an ALJ interpreting raw medical data to draw medical conclusions despite being unqualified to do so. *See Christina M. v. Saul*, 18-CV-0332, 2019 WL 3321891, at *7 (N.D.N.Y. July 24, 2019) (Hummel, M.J.) (recognizing that "[t]here is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded only from the latter").

17

Second, the ALJ's finding that plaintiff benefitted from her treatment is simply not consistent with the record as a whole. AT 16. Although the ALJ points to discrete statements where plaintiff reported some benefit from a short course of prednisone, "responded well" to chiropractic adjustments, had "modest" improvement in her pain following her laminectomy, and had "temporary" relief following injections, these statements ignore the fact that none of the treatments plaintiff tried, even her laminectomy, provided any significant or ongoing relief of her pain. Notably, plaintiff reported in November 2018 that she stopped going to her chiropractor because it was not helping her. AT 387. In February of 2019, it was noted that she had "tried extensive conservative care without relief," and her provider documented that she had tried physical therapy, chiropractic care, acupuncture, nonsteroidal anti-inflammatory medications, and hydrocodone all without relief, while prednisone provided only "mild temporary relief." AT 313. Indeed, plaintiff had so little improvement from her laminectomy that her physicians referred to it as a "failed" procedure and recommended further surgery. AT 439, 448. An injection she received around September 2019 worked only for a short time. AT 456. She also reported to her physician that gabapentin, oxycodone, and Celebrex did not provide any significant relief. AT 297, 428. The ALJ's finding that plaintiff

benefitted from treatment in a way that would suggest she retains an ability to perform light work is simply not supported by substantial evidence.

Third, the ALJ relies on a single report in a treatment note that plaintiff can perform "simple activities of daily living." AT 16. The ALJ ignores, however, that the same treatment record lists as examples of "simple [activities of daily living]" hygiene and feeding herself, as well as plaintiff's concurrent reports that she was at that time still having a significant amount of pain and was limited in her abilities to sit, stand, or walk for even short periods of time. AT 413. The ability to perform basic life requirements such as hygiene and feeding oneself simply does not provide substantial support for the ALJ's finding that plaintiff is capable of performing light work on a sustained basis, and is not necessarily inconsistent with a finding of disability. *See McGregor v. Astrue*, 993 F. Supp. 2d 130, 142 (N.D.N.Y. 2012) (McAvoy, J; Bianchini, M.J.) (acknowledging that "it is well-settled that the ability to perform basic activities of self-care . . . do not by themselves contradict allegations of disability, as claimants should not be penalized for enduring the pain of their disability in order to care for themselves"); *accord Pamela P. v. Saul*, 19-CV-0575, 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) (Stewart, M.J.). Although it is true the ALJ did not rely solely on plaintiff's daily

19

activities for either her finding that plaintiff could perform light work or her finding that Dr. Lamanna's opinion is unpersuasive, this error further demonstrates that the ALJ's findings as a whole are not supported by substantial evidence.

The above errors in assessing the evidence undermine the ALJ's finding that Dr. Lamanna's opinion is not supported by her treatment notes or consistent with the evidence and prevent meaningful review of whether the ALJ's overall conclusions are supported by substantial evidence.

I also note, moreover, that the opinions from the two nonexamining sources cannot provide substantial evidence to outweigh the above errors under the circumstances. Both physicians opined that plaintiff would be able to perform the requirements of light work with no additional limitations. AT 77-79, 87-89. The opinion of Dr. A. Periakaruppan was rendered after considering only four of the exhibits in the administrative record, which did not include any of the treatment records of Dr. Lamanna, and all of which predated plaintiff's laminectomy. AT 75-76. Dr. Periakaruppan therefore did not consider much of the relevant evidence in the record and did not have the ability to account for plaintiff's laminectomy in particular. Dr. S. Putcha, who provided an opinion on May 7, 2019, considered two additional exhibits, which included treatment reports from Dr. Lamanna

between August 23, 2018, and April 26, 2019, and from Upstate Medical Hospital for a similar period.  AT 84-85.  Although Dr. Putcha therefore was able to consider the fact that plaintiff underwent a laminectomy, he did not review any records from more than approximately a month after that surgery.

Because plaintiff was still healing from her surgery, performed some six weeks earlier, at the time he rendered his medical findings, Dr. Putcha could only speculate as to what plaintiff's functioning would be twelve months after that surgery.  He stated that "[w]ith continued healing and compliance to therapy and treatment, it would be reasonable to say the [claimant] would be able to stand/walk for 6hrs, sit for 6hrs, and lift up to 20lbs occasionally 12 months after surgery date."  AT 89.  Indeed, he specifically noted that his finding of an ability to perform light work was for "12 months after onset: 03/25/2020."  AT 88.  The problem with Dr. Putcha's opinion is twofold.  First, his speculation is based on an assumption that plaintiff's condition would improve with healing from her surgery and adherence to treatment, when, in fact, as was already discussed, the laminectomy did not result in any significant improvement in plaintiff's pain even after she healed and the other treatment modalities used were not effective for any significant amount of time, thus

21

undermining Dr. Putcha's assumption that plaintiff's condition would improve in the twelve months after her laminectomy. *See* 20 C.F.R. § 404.1520c(c)(5) (noting that one of the "other factors" an ALJ might consider in relevant cases is the source's familiarity with the other evidence in the claim, indicating that "[w]hen we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive"). It is not clear that Dr. Putcha was aware that plaintiff's physicians recommended a second spinal surgery due to the failure of her laminectomy. Second, Dr. Putcha explicitly indicated that this ability to perform light work would be effective as of March 25, 2020, but it is not clear what plaintiff's functional capacity would be in the time before that date, even if his speculation were reliable. The only other opinions that address the relevant time period prior to that date are Dr. Pariakaruppan's prior administrative medical finding, which represents a questionable assessment of plaintiff's overall functioning as was already discussed, and Dr. Lamanna's opinion, which the ALJ found wholly unpersuasive based on reasons that do not appear to be supported by substantial evidence.

Given these problems, and the errors noted above related to the ALJ's interpretation of the MRI evidence, the efficacy of plaintiff's treatment, and her activities of daily living, the ALJ's reliance on the opinions of the nonexamining physicians in conjunction with the objective medical evidence alone does not provide substantial evidence to support her finding that plaintiff can perform light work with no other limitations. In particular, I am concerned that, in relying almost exclusively on the objective examination findings despite the well-documented reports of ongoing severe pain that has been fairly unresponsive to treatment, reports which plaintiff's physicians appear to generally credit despite the lack of objective findings, the ALJ did not adequately consider the effect of plaintiff's pain. SSR 16-3p, which addresses consideration of a claimant's reports of symptomology, provides, in relevant part, as follows:

> [W]e will not disregard an individual's statement about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.  A report of minimal or negative finding or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.

SSR 16-3p.  Notably, the ALJ's other provided reasons for finding plaintiff's reports of pain were not wholly consistent with the evidence are all based

23

on a flawed assessment of the evidence, as was discussed above. Reconsideration of these issues based on a proper analysis of all of the evidence is required.

While concluding that the matter should be remanded, I decline to direct a finding of disability and a remand solely for calculation of benefits. Although Dr. Lamanna's opinion contains limitations that, if accepted, would likely be disabling, the evidence in this case is not so persuasive of disability that remand for further proceedings would serve no useful purpose. Notably, it is not clear that the record supports that the ALJ would be required to adopt the entirety of Dr. Lamanna's opinion.  This is also a case in which further development of the record, such as an opinion from a consultative examiner or medical expert, might be helpful given the noted issues with the prior administrative medical findings of the state agency nonexamining physicians.  Because the errors identified here involve questions that still need to be resolved, remand for further proceedings is the appropriate course of action.

IV.    SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination did not result from the

application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 16) be DENIED, the Commissioner's decision be VACATED, and this matter remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     June 21, 2022
           Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge